Thank you. My name is Deputy Attorney General John Millay. I represent Karen Doody. To my left is Deputy Attorney General Nelson Nabetta. I understand we are to split the 15 minutes between the two of us. I would like to reserve two minutes for rebuttal on my own and speak for five minutes and allow Mr. Nabetta to argue the remainder of the time. Turning to the first question I want to talk about and that is the manner in which the interview of Vanessa Haldeman was conducted by Karen Doody. That is the core of the Haldeman's claim against Karen Doody. It is based on their belief that there is one and only one correct way to investigate a claim of sexual abuse of a child. They assert that Doody did not investigate the claim properly at the preschool and she did not conduct the interview of Vanessa Haldeman properly. Just to clarify, I understood that the initial seizure and questioning were not that issue in this appeal. It was the taking them out and putting them into custody away from their parents. It is the whole panoply. Judge Ezra did grant me summary judgment on the removal of the children for the purpose of conducting interviews. However, they have made a claim that the manner in which this was conducted was abusive and coercive and created false evidence. That is a big part of their claim still. I knew it fit in, but I wasn't sure of the context in which it fit. Go ahead. They have asserted that based on the expertise of the experts, the painstaking review that the experts did of the evidence presented and their impeccable credentials, this court cannot disregard their opinions and therefore that created a question of fact which supported Judge Ezra's denial of our motion for summary judgment. Let me ask you about the two parts of your argument, or both of you I guess to some extent, that I would appreciate your addressing. The first has to do with the seizure of the brother and whether there is an issue of fact as to the propriety of that. The second has to do with the allegation that there was an agreement to falsify evidence. Why, as to those claims, are your clients entitled to qualified immunity? Thank you. Addressing the first part of the question regarding removing Benjamin Haldeman from the home, in addition to what they learned from Vanessa Haldeman, Benjamin Haldeman was interviewed and provided specific information which corroborated what Vanessa Haldeman had stated. Now, in Hawaii, children can be removed from the home if the social worker believes that the children are in danger of imminent harm. Hawaii law defines imminent harm not only as harm that's going to occur within the next few hours, but harm that will occur within the next 90 days. So the harm with respect to the brother, was there assessment that he might be subjected to sexual abuse himself, or was it more that he might be retaliated against for having corroborated his sister's story and comments? I believe it would be the second, Your Honor, that they were concerned about his safety, about retaliation for disclosing the things that he disclosed during the interview. There was no proof or allegation that Benjamin was subject to sexual abuse by his parents. And with respect to the allegation of falsifying evidence? We don't believe they have produced any evidence whatsoever that there was a falsification of evidence. The only evidence they're presenting on that is, number one, that they have expert opinion to the effect of, we reviewed the way the interview was conducted, we reviewed the way that you conducted this investigation, and based on that, it's our opinion that you have produced false evidence. Of course, that's a legal conclusion and not a factual one. So if I understand your argument correctly, it isn't that falsification would escape the opportunity to bring a claim. That is, if someone does falsify, it would not be subject to immunity. You're just saying there's no evidence to support the claim.  And I pointed out in my brief and in my reply that they have not produced a single shred of evidence that Karen Doody or Donald Kup conspired with anybody to falsify evidence. Well, I thought what their argument was is that they used a technique which their experts say was designed to produce false statements. In other words, that they essentially engaged in a process of leading hypothetical and fantastic questions and so on and so forth, which are unacceptable in the scientific community, and therefore, they knew or should have known they were going to be getting falsified or fantasy answers. That's exactly their argument, Your Honor. However, I think a court should disregard an expert's opinion where it's simply a legal conclusion for the court to determine whether or not the defendant's conduct violated the plaintiff's civil rights. I don't believe that the retained expert's giving a legal opinion is something this court should give any weight to whatsoever. Well, I just want to make sure I understand. I take that point, but the point that they're making, one point they could be making, was that if these clients, in the course of carrying out their duties, engage in a modus operandi of interrogating or questioning a child, alleged child victim, in such a way that they're going to be producing false answers and they should reasonably have known that, then they would essentially be engaged in a process to produce false information, and they're knowingly doing that. That is their argument, Your Honor. However, I don't think there's any evidence that my client or Donald Cup knowingly did this. They conducted the interview, or Karen Doody conducted the interview in a manner she thought was appropriate. But that would be a factual question, not a legal question. You said it was up for us as a question of law. Right, Your Honor, and certainly the court can decide if that's a material issue of fact or not. I'd like to turn over the podium to my other deputy. I think you may do that. Go ahead. May it please the Court. Nelson Lovetta for Donald Cup. If I could take the question put by the Court regarding the falsification of evidence claimed as it relates to qualified immunity. Okay. In this case, the Court found a disputed issue of fact because of certain expert opinions. One of the experts, I believe it was Dr. Randy Rand, indicated there's certain out-and-out false information placed in the petition as well as the Safe Family Home report. According to the Court's analysis or determination of this type of claim, both in, I believe it's Deverell and then later in Gostrick v. Perez, the Court will analyze a court document that's allegedly false by disregarding all of the false statements and then determining whether there's still grounds to proceed. So in Gostrick v. Perez, Officer Perez's affidavit was claimed to have been falsified to a certain extent. So the Court then eliminated or disregarded all of those allegations and found that the remainder of the allegations still have contained probable cause for the officer to move forward. And qualified immunity was granted in that case. In this case, what was done was creation of issues of fact that were not really material to the determination of qualified immunity. Instead, the Court should have eliminated or disregarded those things that so-called were falsified and then determined whether or not the remaining allegations or the remaining information contained in the Safe Home Family Report as well as the petition contained enough so that the Court could tell whether or not the social worker, Donald Cuff in this case, still had a good faith belief that there was sexual abuse occurring. And that would come partly from the reports from the preschool teachers and so forth that did not result from the allegedly improper questioning. That's true, Your Honor. Those things that remain would be, one, the report from Ruth Golden and Caroline Hayashi concerning the story of sexual abuse related to them by Vanessa. Second, there would be certain aspects of the interview that would also not be disputed by Dr. Randy Rand. There would be indications of not only sodomy but also intercourse between the father and the daughter. And all of this should have been taken into account to indicate that the social worker still had good cause to move forward. With regard to the Court's question as to the interviews, it's Donald Cuff's position that as to the interviews of minors within the context of child abuse investigations, there is no clearly established law on this matter. I believe that's stated so in Devereux, Gosvick, and Cunningham. Your Honor, if I could touch very briefly on the warrant requirement that was brought up by the District Court. The case starts off in the preschool when Ruth Golden, who's having lunch in her office, is interrupted. Vanessa and her teacher, Caroline Hayashi, comes in and that's when the story of sexual abuse takes place. The case then is given to the police and then to the social worker. This is significantly different from White v. Pierce County and all the other cases requiring a warrant that ends up with Rogers v. County of San Joaquin. The social worker had, according to statute, the right and the reasonable cause to accept custody from the police officer. The police officer, in turn, had the right and authority to receive custody from the preschool. So this is not a situation where the social worker intrudes upon the family home and needs a warrant. I think I need to reserve the rest of my time. You may do that. Thank you. We are here for closing counsel. In the court, I'm Demosthenes LaRondosa on behalf of the children. And in a very real way, on behalf of all of the families that for nine and a half months testified in Hawaii and Kauai and Oahu to the outrageous practices of the DHS in these islands. And in a very real way, on behalf of all of the children under the protection of this honorable circuit. Judge Beezer, you knew 20 years ago about the horror that happened in the McMartin case. That was your case. 20 years ago, the terrible interview that happened. Counsel, you know, we're sort of bound by the record in this case. Can you confine your arguments to the record in this case? I am. The horrible interviewing that occurred. McMartin, I was in Los Angeles. Was the McMartin case made part of the record here? The expert reports that were provided gave the court a hundred years, a hundred years of scientific research concerning how to get skewed interviews, how to create memories in children. In fact, when they couldn't get what they wanted from this little girl, after taking her in violation of her clearly established constitutional rights out of the school, when they couldn't get her to say what they wanted her to say, they put an earphone in her ear. What clearly establishes a constitutional right not to be removed from the school for questioning after she has told her teacher of sexual abuse in the home? If the constitutional right to be free from governmental intrusion is well established with respect to children and citizens of this state and this country, children have a right not to be intruded upon by the government. What is your best case, Supreme Court case, that establishes clearly the right of these children not to be interviewed further and taken out of the school after telling of sexual abuse in the home? What is your best Supreme Court case that says that that is absolutely not to be done? Your Honor, in Sorrell v. McKee, this Court said that the obvious illegality doesn't require a case on point. There is no Supreme Court case because these plaintiffs can't get these cases to the Supreme Court because everybody seems to forget that in these circumstances, 42 U.S.C. 1983 was started as a Ku Klux Klan Act in 1871, and it was described by Congress as a remedial statute. These plaintiffs that testified all across Hawaii, the potential plaintiffs that testified all over Hawaii in nine and a half months of hearings about the abuses by this DHS are poor. They can't get these cases to court. You have so far seemed to concede that there is no Supreme Court case that's closely analogous to your facts. That's how I understood your answer. That's correct, Your Honor. And I want you to assume for the purpose of this question, and I know you do not concede. I know you strenuously do not concede. But I'd like you to imagine a situation in which the child actually has been abused in the manner that this child described. What do you think is constitutionally mandated and permitted for a social worker to do when faced with a small child who has been terribly sexually abused at home? What are they supposed to do? They're supposed to follow the law. Well, specifically, that's a nice generality. They're supposed to have... Were they allowed to interview this child? They were allowed to stop the child in place and attempt to discover what is going on. Remember that an allegation in the air or the hearsay testimony of a supposed victim doesn't rise to the level of probable cause. Remember that in order to break into a family relationship, into a fundamentally protected constitutional relationship, and clearly in Maryland v. Craig, the United States Supreme Court dealt with the special protection that has to be accorded to children when there are allegations of sexual abuse made. And in Maryland v. Craig, the United States Supreme Court said that it's so important to protect children from being coerced and attacked in these circumstances that a bedrock principle must occasionally give way, a bedrock principle like confrontation. So isn't the job of these social workers to protect the children from physical harm, isn't that really their mission, to protect children from being physically abused and sexually abused? No doubt about it. But when you have a circumstance where you have the children's constitutional rights, the family's constitutional rights, which are distinct, and the parents' constitutional rights, which are distinct again, and the state's parents' patriotic responsibility to protect its children in direct conflict, you have to analyze, do you have probable cause to believe a crime has been committed? If you don't have probable cause, you've got to get a warrant. Wallace v. Spencer, maybe v. San Bernardino. And if you don't get a warrant and you don't have probable cause, you can't seize the child. You can't take the child. That's what this court says, and that's what the law requires. Indeed, when you're trying to analyze, do they have probable cause? What do they know? What did they know when they went to that school? Because remember, they decided to take the kids before they even went there. Can you clarify the question I asked at the beginning? You nodded when I made my statement about what was at issue. You're now talking about seizure. All right, are you saying, are you attacking the fact that Vanessa was interviewed at all, or are you attacking the fact that she was taken somewhere to be interviewed? Taken. That she was taken. Because when you wrote your concurring and dissenting opinion in Price v. Survey, you said that what we need to do when we analyze extreme intrusions into personal liberty, we need to know the quantity, the quality, the content, and the reliability of the evidence in the mind of the person, of the officer or the social worker. And we know that social workers are required to follow the Fourth Amendment like everybody else. When they exercised, when they intruded into that fundamental constitutional right. So what is your point? Is your point that they should not have taken her for questioning based on the information they obtained at the preschool? Absolutely. Absolutely that's the point. We've argued, I mean, in Spigney v. Kinksey and Wallace v. Spencer, the court said the police and the social workers can't seize them. But what should they have done given the fact that... Are you interested in my question? Yes. My question is, we have allegations by a child to teachers of sexual abuse at home. So now the state has a mechanism in place to deal with that. The teachers are under obligations to report claims by children of potential sexual abuse. Children can, as the McMartin case showed, fabricate these things. We know that. But there is a balance. And what we're talking about in this case is the balance is applied on these facts. Now on these facts, Vanessa made statements suggesting she was being sexually abused. So I'm trying to understand at what point did the social workers cross the constitutional line in an effort, in their view, to protect the child? Are you saying that all they could do was interview her at the preschool? Could they not interview her but had to call in a parent? What is your argument in that regard? Could they have a medical examination? Certainly not. No, certainly not. Certainly not. Maybe Wallace and numerous cases in this circuit. But more to your point, with all due respect, you've been misinformed. The child did not say she'd been sexually abused at the preschool. If the social workers, you've been misinformed. That's why we incorporated into our argument document 802 in our briefs. If the social workers had asked only four questions, four questions that any high school kid doing a science project would know to ask, only four questions, how often has this happened, Miss School Principal? What do the preschool personnel do when Vanessa acts out like this? What do the parents say? Does it happen anywhere else? Four questions. If they'd asked the first question, what do you do? How long has this been happening? They would have found out that it began in July when the CPS was first called. Ninety-nine days later, CPS gets there. What had happened in July, the sworn testimony in the record below says that the school teacher, the unaccredited, no bachelor's degrees from any accredited university, church school preschool personnel confronted Vanessa, took her out of class, took her down to the principal, gave her treats, talked about sex and prayed with her, took her back to class and did not tell the parents. Several days later, Vanessa acted out sexually again. They confronted her, took her out of class, took her down to the principal, gave her treats, talked about sex and prayed with her, took her back to class and did not tell the parents. Several days later, it happened again. They confronted her, took her out of class, took her down to the principal's office, gave her treats, talked about sex, prayed with her, took her back to class and did not tell the parents. And the sworn testimony from the preschool personnel is, they did this every day. The school personnel are not the defendants here? Unfortunately not. You'll see me again. Because these plaintiffs can't get these cases to trial. They don't have the money or they get short shrift on the rights that the Supreme Court said are sacred. They're just simply not respected. And the courts find their own facts. They throw the cases out directly contrary to the law. What did the social worker have available to her when she went to the preschool? She had the availability to her when she went to the preschool of kids' program, kids' world program, where Vanessa also went. None of these behaviors ever happened there. She had just a cell phone. She was there at 930 in the morning. Well, you are totally second-guessing the way in which this was done. They should have asked this question. They shouldn't have asked that question. And that really isn't our function. Our function is to determine whether what they did do was clearly constitutionally impermissible such that there should not be qualified immunity. It's not to determine whether they could have done a better job. They were told by the school that this child had acted out sexually in some very bizarre ways. They were told by the school that she had made a claim of abuse at home. And, you know, you've got a script of what they should have done, but I still have difficulty determining why what they did do clearly violated established constitutional guidelines for how to conduct an investigation into those very serious allegations. We have to put, first of all, with all due respect, you're misinformed. The child did not say that she was being sexually abused. The child responded to what she was manipulated into saying. Day after day after day after day after day. You're saying that she shouldn't have said it because, you know, that's not true. I'm saying she was manipulated by her preschool. That's clear in the record. She said it, though, did she not? She did not. She said something about tinklers and daddy. And the people at school, tinklers, daddy, suck, were the things she said. When she was put in the car to be taken to the interview place by Karen Doody, she testified later, because they made her go over this and over this and over this, so she remembered it, that Doody coached her in the car, and it's uncontroverted in the record, Doody coached her in the car as to say, suck, daddy, and tinklers. She had said those words at school? Yes, she had. To whom? To her teacher, Carolyn Hayashi. What would the teacher reasonably infer from that? Well, they'd take her out of class. What would they infer she was referring to? They would infer she was referring to interpersonal sexual behavior. Yes. Because she'd been shaped and conditioned and manipulated to do interpersonal sexual behavior by the preschool every day. Preschools are not the defendants here. The question is, what happens when the social worker comes to the school and talks to teachers who give her that information? What is she supposed to do in your view? She is not allowed. Well, first of all, Your Honor, the United States Supreme Court tells us that a close analysis of the facts is directly relevant and intimately connected with an analysis of qualified immunity. I mean, that's been our law since 1987 in Anderson v. Creighton. So what was the social worker supposed to do? Well, Wallace v. Spencer says they must conduct a reasonable investigation before they seize. The child, before they can seize her, there has to be an emergency, a court order. Before they can seize, they have to have a court order. Yes, because I don't give a flying fruitcake about what the statute in Hawaii says because the federal courts are the final arbiters of federal rights. We're suing under federal constitutional rights. So you're saying that that statute is unconstitutional. I'm not attacking the statute. I don't even care about it. The statute allowed what was done here in terms of removing the child from school to talk to her further. So if that was wrong, aren't you necessarily attacking the validity of the statute as well? Grossman v. City of Portland. Well, that's a yes or no, please. Are you attacking the validity of the statute or not? I'm attacking the application of the statute. I'm attacking its validity in this sense because Grossman v. City of Portland tells us that a state actor cannot follow a state statute that has engaged in obvious unconstitutional behavior and turn a blind eye to the constitutional ramifications of what they're doing and then claim immunity under the statute. That's what Grossman stands for. But Wallace, more to the point, says you've got to investigate. And when you have time to deliberate, they're there at 930 in the morning. Well, that's at gross purposes. What they did was investigate. You just don't like the way they did it. They did not investigate. You're interrupting me. I beg your pardon. What I'm hearing from you is on the one hand, they're supposed to investigate. On the other, they did investigate and found information that you're arguing was invalid information and they shouldn't have relied on it. So are they allowed to investigate or not investigate? They must investigate. They're required to investigate, and the investigation must be reasonable. They determined to take the children, it's uncontroverted in this record, before they even went to the school. And when they went to the school, they didn't bother to find out how this came about. They didn't bother to ask if it happened anywhere else and if they'd only made a cell phone call. They had hours and hours and hours before the kid was supposed to be picked up. There was no exigency. There was no probable cause. There was no quantity, quality, content, or reliability in the information they had. They had only the hearsay statements of the child through the teachers, and writing it down doesn't make it any more reliable as hearsay. And they didn't bother to find out that she was in three other daycare programs because the parents were building a house and needed to put her in a daycare on the weekends from time to time, and these behaviors occurred nowhere else. They didn't bother to call the lady that just got a real estate license that was her babysitter and to find out that these behaviors occurred nowhere else. Counsel, you have exceeded your time, but you may wrap up with a sentence or two if you'd like to. Yes. It's a remedial statute. The interviewing, the quantity of information that they had before they seized this child, took her from the school, before they took her from the school and coached her what to say, before they put the earphone in her ear and told her what to say, before they wrote it down, before they wrote it down, and you know about, you wrote the opinion, Your Honor, in Whittaker v. Garcetti about judicial deception, before they lied directly to the circuit court about what had happened, before they lied about Benjamin saying he corroborated when he didn't corroborate. He said, No, it didn't happen. No, he didn't corroborate anything. It's laid out in the briefs. We describe lie after lie after lie. It's in a report with hundreds of citations by Dr. Rand. It's in the briefs. This is a very long sentence to wrap up, sir. Okay. Document 802, document 852, document describes all of the lies. Document 801 describes all of the rights violated. Please take a closer look at the facts because it sounds as though you've been misled. Thank you for your time. Thank you, sir. I can assure you we look at the record very carefully. Thank you, Judge. There is some rebuttal time remaining, and as opposing counsel exceeded his time, you may have an extra two minutes as well if you want them. Thank you, Your Honor. Thank you, Your Honor. I'm very brief, and I'll turn the podium over to Nelson Yabetta. This case is simply about the assertion that we've conducted improper investigation. We're asking the court to provide us with qualified immunity here. First of all, the initial question is whether or not anyone's constitutional rights were violated because of what social workers did here. The second issue was would a reasonable social worker have understood he or she was violating the plaintiff's rights by protecting the child or protecting the children and placing them into custody. Were there constitutional claims asserted in the trial court? I'm not following your question. By the other side. Did they assert any constitutional claims? Well, they asserted in Section 1983 claiming that we violated constitutional rights, Okay. Your Honors, the court has not been misled nor misinformed. The clearly established law concerning this case is that families do have a right to be free from governmental interference, but this right is not unlimited. The right is subject to things like emergencies. Document 802-26 is the testimony of Ruth Gordon, excuse me, Ruth Golden in this case, and she tells specifically of what happened when Vanessa and her teacher, came into her office and told about the sexual abuse. Sexual abuse is an emergency according to the case law. And when this occurs, the statute requires that the department, especially CBS, do an investigation. In this case, there is no clearly established law that indicates how an investigation ought to occur. Neither Devereux II, nor Gosvick, nor Cunningham indicates any type of constitutional requirements as to exactly how a social worker must go about investigating this kind of case. Now, the plaintiff's expert Counsel, you also are exceeding your time, so if you'd wrap up in a sentence or two, you may. Because there is no clearly established law in this matter, all of the recommendations, or rather the opinions of the experts, really are not material and not relevant. Thank you. Thank you, Counsel. We appreciate the arguments of both parties. And I would reiterate that we do always take a very close look at the record, and we will in this case as well. My case just argued is submitted.
judges: Beezer, Graber, Fisher